[Civ. No. 12010. First Dist., Div. Two. July 28, 1942.]

FRANK D. HALL et al., Respondents, v. CITIZENS NATIONAL TRUST & SAVINGS BANK OF LOS ANGELES (a National Banking Association) et al., Appellants.

Richard L. North, Rosenshine, Hoffman, Davis & Martin, Elbert W. Davis, Arch H. Vernon, Earl E. Johnson and Gilbert E. Harris for Appellants.

Goudge, Robinson & Hughes, David A. Sondel, and Hagar, Crosby & Crosby for Respondents.

NOURSE, P. J.—Defendants have appealed from a judgment perpetually enjoining a proposed trustee's sale pursuant to a notice of sale theretofore given; and temporarily enjoining any such sale under either a declaration of trust or a deed of trust securing the same obligation for a period of one year from the date of entry of the judgment for failure to pay interest between February 9, 1939, and November 13, 1939, or subsequent to entry of the judgment and enjoining them for eighteen months subsequent to entry of the judgment from declaring any such default for failure to pay principal or interest prior to February 9, 1939, or between November 13, 1939, and entry of the judgment, or for failure to pay taxes prior to the entry of judgment. The judgment further declared that appellant Pacific States Corporation had not and never had had any interest in said declaration of trust or said deed of trust or in the obligations secured thereby.

The property encumbered by the instruments involved consisted of 300 acres in Leona Valley, Los Angeles County.

Prior to January 13, 1927, it had been owned by respondents Frank D. Hall and Marguerite S. Hall, his wife, (hereinafter collectively designated as "the Halls"); on the last mentioned date the Halls caused respondent corporation (hereinafter designated "Farm Builders") to be incorporated for the purpose of holding legal title to the land which was thereafter transferred to said corporation, upon the understanding that it would issue to the Halls all of its capital stock. A permit to issue the stock in exchange for the land was obtained but was revoked before the stock had been transferred and on December 12, 1932, Farm Builders purported to re-transfer the property to the Halls.

On July 30, 1927, Farm Builders borrowed $45,000 from Pan American Bank of California (hereinafter designated "Pan Am. Bank") evidenced by its promissory note payable on July 30, 1932, and secured by the deed of trust wherein Title Insurance and Trust Company (hereinafter designated "Title Co.") was trustee. Concurrently, Farm Builders entered into a declaration of trust with Pan Am. Bank wherein the latter was trustee and a beneficiary. On December 2, 1929, this was supplanted by declaration of trust No. 5873 wherein Citizens National Trust and Savings Bank (hereinafter designated "Citizens Bank") was trustee and Pan Am. Bank was a beneficiary. By liquidation proceedings commenced July 19, 1929, the Superintendent of Banks of California took over Pan Am. Bank. On January 7, 1930, the superintendent, through a deputy, executed a grant deed to Citizens Bank.

Declaration of trust 5873 provided for release prices of the lots comprising the encumbered property. On October 28, 1935, it was amended to reduce the release prices; this amendment was executed by Farm Builders, the Citizens Bank as trustee, and Pan Am. Bank in liquidation, but not by the Halls. On February 9, 1939, the declaration was again amended to further reduce the release prices; this amendment was executed by the same parties; however, it was also signed by the Halls though they were not named as parties.

Farm Builders' corporate powers were suspended June 26, 1930, and were not revived until November 22, 1940. (The transfer from Farm Builders to the Halls, the two amendments of October 28, 1935, and December 9, 1939, of the declaration of trust No. 5873, and the commencement of this action all occurred during the period of suspension.)

On November 2, 1939, in the proceedings for the liquidation of Pan Am. Bank the court, after petition filed on October 27, 1939, followed by five days notice by posting, authorized the Superintendent of Banks to transfer to Pacific States Corporation, among other assets, all the beneficial interest of Pan Am. Bank in declaration of trust 5873 in compromise of certain litigation instituted against him as liquidator of Pan Am. Bank by said Pacific States Corporation. On the same day the superintendent purported to make said transfer. On November 13, 1939, Pacific States Corporation notified Citizens Bank not to permit sales under the declaration of trust (pursuant to the release provisions) without its approval and thereafter Pacific States Corporation and Citizens Bank refused to approve sales. On June 4, 1940, Pacific States Corporation directed Citizens Bank to declare all obligations under the declaration of trust due and proceed to a trustee's sale. Notice of sale was given on July 3, 1940, and the sale was noticed for November 13, 1940. This action was commenced November 4, 1940.

The permanent injunction was based upon the finding that the transfer to Pacific States Corporation was void because (1) the Superintendent of Banks lacked the power to make such a transfer, (2) the notice of hearing of the petition was inadequate, and (3) the description of the declaration of trust was defective, and that therefore said corporation could not properly require either of the trustees to proceed to a sale; and upon the further finding that the declaration of trust (despite contrary express provision) did not authorize a sale for failure to pay principal or interest so that appellant Citizens Bank lacked authority to proceed on its own initiative as trustee.

The injunction for the limited period was based upon alleged estoppels to assert the defaults mentioned and claimed to arise out of the amendments of the declaration of trust and the notice of November 13, 1939, from Pacific States directing that further sales under the release provisions not be made. The court declined to make any finding as to the amount due for principal, interest and taxes.

Appellants first contend that respondent Farm Builders lacks capacity to maintain the action because of the suspension of its corporate powers and that the Halls could not maintain the action because the deed from Farm Builders to them was void, having been executed during such period of suspension.

The action, as aforesaid, was commenced November 4, 1940, and the corporate powers were revived November 22, 1940, subsequent to the filing of the answer but before trial of the cause. The precise question presented is whether a revival subsequent to the interposition of a plea in abatement raising the question, but before the hearing of the plea, is a sufficient avoidance of the plea.

Commencement of the action during the period of suspension is not a nullity and a revival of the corporate powers prior to the interposition of the plea is sufficient. (*Maryland Casualty Co.* v. *Superior Court,* 91 Cal. App. 356 [267 Pac. 169].) Appellants do not question this rule; it is their contention that the revival must come before the defendants have raised the point. It is true that language used in some cases would support that view but each of the cases cited by appellants is quite clearly distinguishable.

*Boyle* v. *Lakeview Creamery Co.*, 9 Cal. (2d) 16 [68 P. (2d) 968], did not involve the question of revival of corporate powers at all. In *Smith* v. *Lewis,* 211 Cal. 294, [295 Pac. 37], the court was concerned with the validity of a judgment made and entered prior to a revival of the plaintiff's corporate powers; even on that question the language is dictum insofar as the opinion expressly states that there was nothing in the record to show that there had been a revival at any time. In *Ransome-Crummey Co.* v. *Superior Court,* 188 Cal. 393 [205 Pac. 446], the court held that the filing of a notice of intention to a move for a new trial is jurisdictional for the hearing of the motion and that a notice given during the suspension was not validated by a subsequent revival prior to the hearing. That case is not analogous for, as is pointed out above, the filing of an action during a period of suspension is not a nullity. The distinction of *Ransome - Crummey Co.* v. *Superior Court* made by this court in *Maryland Casualty Co.* v. *Superior Court, supra,* is equally applicable here. *Cleveland* v. *Gore Bros., Inc.,* 14 Cal. App. (2d) 681 [58 P. (2d) 931], is most nearly parallel to this case and is primarily relied upon by appellants. However, the holding in that case must be confined to the facts there presented. That action was commenced during the period of suspension; shortly thereafter the period of the statute of limitations expired; the defendants in their answer pleaded the suspension of the corporate powers. After the running of the statute and the filing of the answer the

corporate powers were revived. The court held that the revival could not be given a retroactive effect so as to permit the filing of the action at a time of incapacity to toll the running of the statute of limitations; it was the intervening fact of the expiration of the statute of limitations that controlled the decision. In truth the plea was not one in abatement but a defense to the action on the merits.

The question presented is controlled by the decision in *Rudneck* v. *Southern California M. & R. Co.*, 184 Cal. 274 [193 Pac. 775], wherein the court held that the publication of a certificate of co-partnership subsequent to the filing of an answer pleading the failure to file the same but prior to the trial of the case would defeat the plea. At page 282 the court said: "The rule is also settled that it is not necessary that the plaintiffs have complied with the statute at the time of the commencement of the action; that it is sufficient if they have done so at the time at least when issue as to the matter of abatement is made. (*California etc. Society* v. *Harris* [111 Cal. 133 (43 Pac. 525)], *supra; Ward etc. Co.* v. *Mapes* [147 Cal. 752 (82 Pac. 426)], *supra; Roullard* v. *Gray*, 38 Cal. App. 79 [175 Pac. 479].) We have no hesitation in extending this rule so as to make it sufficient if there be a compliance with the statute before trial upon the issue. It is well settled that a plea by way of abatement of another action pending will be avoided by proof that the other action is no longer pending at the time of trial, although it may have been pending when the plea was made. (*Collins* v. *Ramish* [182 Cal. 539 (188 Pac. 550)], *supra*, and authorities there cited.) The reasoning of the decisions we have cited, beginning with *California etc. Society* v. *Harris*, holding that in such a case as the present a compliance with the statute is sufficient if accomplished before objection is made, proceeds upon the analogy between such a defense and one of another action pending. We see no reason for not following the analogy throughout and holding that in the case of one, as well as in that of the other, the defense fails if it appears at the time of the trial that the matter of abatement no longer exists. In fact, it would seem difficult to reconcile *First Nat. Bank* v. *Henderson*, 101 Cal. 307 [35 Pac. 899], with any other view. In that case a judgment in favor of a banking corporation, as plaintiff, had been given, and an appeal was taken on the ground

that the defendant had pleaded and proved that the plaintiff had not filed with the county recorder certain statements which it was required by statute to file as a condition of its right to maintain an action. Pending the appeal, the statute imposing the condition was repealed, and this being made to appear to the Supreme Court, it was held that the ground of defense was removed and the judgment for the plaintiff was affirmed, although the fact that the plaintiff had not complied with the statute plainly appeared. If the removal of the ground of such a defense after judgment is sufficient to justify a disregarding of the defense upon appeal, we can see no reason for not disregarding a very similar defense in the present action, if at the time of trial it appears that the ground for it no longer exists." The failure to publish articles of co-partnership and the suspension of corporate powers, insofar as the maintenance of an action is concerned, are attended by the same penalties or disabilities and no reason suggests itself why any different rule should be applied to one than to the other, and we therefore conclude that the revival of the corporate powers before the trial of the case was sufficient to permit respondent Farm Builders to maintain the action.

 Respondents argue that, irrespective of the validity of the deed, there having been a total failure of consideration for the prior deed from the Halls to Farm Builders, the latter held the property as a constructive trustee; that the Halls are therefore the real parties in interest and proper parties plaintiff. Appellants argue that there was no constructive trust because a failure of consideration is not proper ground for rescission of a conveyance of real property, and rely upon *Schott* v. *Schott,* 168 Cal. 342 [143 Pac. 595], and *Williams* v. *Reich,* 123 Cal. App. 128 [10 P. (2d) 1030]. The first of these cases involved a conveyance in consideration of a promise of *future* support, and the latter a conveyance in consideration of a promise to marry in the *future;* in neither was fulfillment of the promise expressly made a condition subsequent. These cases, as well as the many decisions in other jurisdictions to the same effect, are quite patently distinguishable from the situation here presented. In this case the conveyance by the Halls to Farm Builders was intended to be concurrent with the issuance to them of the corporate stock; the failure to deliver the stock did not therefore involve a breach of a promise to be performed

*in the future* but, to the contrary, a failure of an implied condition to the validity of the conveyance. This distinction is recognized in *Lawrence* v. *Gayetty*, 78 Cal. 126 [20 Pac. 382, 12 Am. St. Rep. 29], where at page 133 the court says: "It must be borne in mind that the plaintiff did not contract to convey upon the performance of the contract on the part of the defendants; therefore his promise was not dependent upon theirs. . . ." Here the Halls did agree to convey upon issuance of the stock. Therefore their conveyance was dependent upon issuance of the stock.

Appellants do not contend that if the Halls had a right to rescind they are not proper parties; however, they do contend that independent of the question of law just discussed there was no evidence of the facts upon which respondents predicate their argument and no finding by the court that such were the facts. With respect to the lack of a finding appellants are in error. The court did so find in the first paragraph of finding numbered I. In their brief respondents have not indicated any evidence which would support this finding nor have we found such. However, in open court, prior to the introduction of evidence, appellants admitted by stipulation the allegations of paragraph I of the complaint wherein respondent had alleged the transfer from the Halls to Farm Builders and the subsequent revocation of the permit to issue stock, except that portion alleging the execution of the deed from Farm Builders to the Halls. As is above pointed out, the Halls rely upon their equitable interest in the property to maintain the action so that even if it be conceded that the portion of the finding referred to, wherein the court finds that Farm Builders had deeded to the Halls, is entirely lacking in evidentiary support nonetheless the remainder of the finding, which is supported by the admission just referred to, is a sufficient factual basis for respondents' argument in this connection. Though it is true that defendant Title Co. in its answer denied those allegations of the complaint, they did join in the stipulation referred to.

■ On this phase of the case there remains only the question whether Farm Builders is a proper party plaintiff. Regardless of the effect of the conveyance from Farm Builders to the Halls, if the former were asserting any actual interest there can be no doubt that it would be a proper party defen-

dant. So long as the corporation does not object it can as well be brought before the court as a party plaintiff. (*California etc. Co.* v. *Schiappa-Pietra*, 151 Cal. 732, 744 [91 Pac. 593].) However, the first finding is that the Halls are the owners of the property while the judgment is in favor of the plaintiffs and each of them. The error in awarding plaintiff Farm Builders injunctive relief might be harmless insofar as it would not impose any different or further restrictions on the defendants than the identical judgment in favor of the Halls alone, but the judgment here goes further. The judgment provides that each of the plaintiffs is entitled to have defendant Citizens National Bank perform the duties imposed upon it by the declaration of trust; this provision with respect to Farm Builders is clearly not supported by, and is contrary to the findings of fact, and is therefore error.

As already stated the holding that Pacific States was not the owner of the promissory note involved or of the beneficial interests in the deeds of trust securing the same, is based upon three grounds: (1) that the Superintendent of Banks had no authority under the Banking Act to execute the transfer; (2) that the notice of hearing of the petition for authority to make the transfer was insufficient; and (3) that the description of the declaration of trust in the order authorizing the transfer was insufficient.

Respondents seek to sustain the first point upon the theory that the authority of the Superintendent of Banks is limited to those powers contained in the Banking Act and that under the act the superintendent's authority to dispose of assets is limited to a sale thereof. Numerous authorities are cited and lengthy argument is addressed to the contention that this transaction was not a sale. But the appellants do not attempt to sustain the transaction upon the ground that it was a sale. However, we cannot agree with the contention that the authority of the Superintendent of Banks is so limited. Such a construction of the act would threaten if not defeat the objectives sought to be accomplished by the provisions for the liquidation of insolvent banks. It may be conceded that in liquidation proceedings the authority of the Superintendent of Banks emanates entirely from the provisions of the act but those provisions are to be given a liberal and not a strict construction. (*Wilson* v. *Superior Court*, 2 Cal. (2d) 632 [43 P. (2d) 286]; *Evans* v. *Superior Court*, 14 Cal. (2d) 563, 572 [96 P. (2d) 107].) It is true that those cases involved the powers of the

commissioner under the Building and Loan Act but no reason is suggested why a different rule of construction should apply here. In fact, in liquidation proceedings the powers conferred by the respective acts are remarkably similar. In applying the same rule of construction to a banking act the court in *Ex parte Smith,* 160 Ky. 83 [169 S. W. 582], said: ''The Banking Act confers upon the commissioner extraordinary powers; and it should be given a broad and liberal interpretation.''

Section 136 of the Bank Act provides in part as follows: ''. . . the superintendent of banks shall have authority to collect all moneys due to such bank and do such other acts as are necessary or expedient to collect, conserve or protect its assets, property and business, and shall proceed to liquidate the affairs thereof as hereinafter provided. . . . The superintendent of banks may sell any real or personal property of such bank on such terms as the court shall direct or approve.

''For the purpose of executing and performing any of the powers and duties hereby conferred upon him, the superintendent of banks may, . . . execute, acknowledge and deliver any and all deeds, assignments, releases and other instruments necessary and proper to effectuate any sale of real or personal property or other transaction in connection with the · liquidation of said bank. . . .''

In *In re Liquidation of Cashmere State Bank,* 169 Wash. 258 [13 P. (2d) 892], in holding that similar general powers authorized the bank examiner to negotiate a loan from the Reconstruction Finance Corporation to be secured by the bank's assets, in order to obviate the necessity of a forced liquidation of ''frozen'' assets, the court (p. 894) said: ''Whatever, therefore, may be reasonably necessary in order to enable the state supervisor of banking to properly function and finally to effect as great and speedy a return as possible, to those entitled thereto, may be said to be included within the preservation and administration of the bank's assets. What is necessary to preserve and administer such assets must necessarily be a matter for the state supervisor to determine in the first instance, subject, however, to the approval of the court.'' In *Lummus Cotton Gin Co.* v. *Taylor,* 188 Ark. 100 [64 S. W. (2d) 90], it was held, under provisions of a banking act almost identical to ours, that the bank commissioner was authorized to exchange notes and other property of an insolvent bank for claims against the bank.

The trial court also found that the notice of the hearing on

the petition for authority to execute the assignment to Pacific States was insufficient. Even if it be assumed that notice was required and that the specified notice was not adequate, that fact does not render the order subject to collateral attack. The court by the express terms of the Banking Act had jurisdiction of the liquidation proceedings, so that the language of the court in *Zilmer* v. *Gerichten*, 111 Cal. 73 [43 Pac. 408], at page 77, is applicable: "Conceding, however, that the proceeding for confirmation of the sale was irregular as claimed, and that notice of the sale was not published for the time required by the order of court, yet these irregularities or errors in the exercise of unquestionable jurisdiction would not invalidate the sale nor the administrator's deed to the extent of making them vulnerable to the collateral attack made upon them in the court below." See also *Weadon* v. *Shahen*, 50 Cal. App. (2d) 254 [123 P. (2d) 88]. Moreover, it is doubtful that any notice was required for, as said in *Dugger* v. *Cox*, 110 F. (2d) 834, where the court was considering similar provisions of the National Bank Act: "The Statute does not contemplate notice to those interested and there are none of the essentials of a controversy, the proceedings lacking judicial characteristics." To the same effect is *Fifer* v. *Williams*, 5 F. (2d) 286. The last mentioned case is a complete answer to respondents' contention that the proceedings for authority to execute the assignment constituted a trial. The holding of the court was expressly to the contrary.

 Nor can the finding of the lower court be sustained upon the ground that the description of the trust instrument was inadequate. The declaration of trust was described by date, the name of the trustee, and the trust number; it may be that a more precise description could have been given but what was in fact given was sufficient to enable to court to identify the property. It should be noted the lower court found that the description in the *petition* and *order* was defective. Title did not pass by virtue of the order but by the assignment authorized. In the petition it was sufficient if the description contained reasonable means for identification of the property. For these reasons the lower court was in error in holding that the Pacific States had no interest in the trust instrument, and, since the Pan Am. Bank had parted with its entire interest in the declaration of trust, it is unnecessary to consider appellants' contention that the court erroneously adjudicated its rights thereunder.

■ The trial court concluded that the Citizens Bank as trustee was without power to declare default under the declaration of trust for failure to pay principal, interest, or taxes, for the reason that any default in respect to those matters could be remedied solely by a sale under the deed of trust. Each of the instruments contains express provisions for a sale in the case of such defaults. No evidence has been alluded to nor has any been found in the transcript concerning the construction of these provisions, nor has authority been cited or found. Having been given to secure the same obligation and as part of the same transaction the two instruments are to be construed together but all the provisions of each must be given full effect except insofar as they may be completely repugnant. That the two instruments contain cumulative remedies for the same defaults, that is, a sale by either of two different trustees, certainly is not an irreconcilable repugnancy. It may be that the interpretation of the trial court is consistent with the intention of the parties but there being no repugnancy and the provisions for sales being clear and unambiguous there is no room for judicial construction. The finding of the trial court was error.

In support of the findings that appellants are estopped to assert default for periods of twelve months and eighteen months respondents rely upon the amendments of the declaration of trust and the notice of November 13, 1939, from Pacific States to Citizens Bank not to permit sales without the approval of the former. Respondents refer to other "numerous and varied acts of the parties" but, except for the amendments and notice just referred to, these acts did not amount to more than a mere forbearance. The amendments merely reduced the release prices of the various parcels of the property; it may be that by executing the instruments the parties waived past defaults but they cannot, under the guise of an estoppel, be construed to be an extension of the maturity of the note. As said in *Rottman* v. *Hevener*, 54 Cal. App. 474 [202 Pac. 329], at page 481: "In taking leave of this question, it may indeed be said that if the doctrine of estoppel were extended to cover a situation such as we have here, it would subvert the salutary rule that a written contract must prevail over previous verbal arrangements, as well as the rule that a written contract can be altered only by a contract in writing or by an executed oral agreement, and would open

wide the door to all the evils which these two rules were intended to prevent.'' Appellants justify the notice of November 13, 1939, upon the ground that respondents were then in default. Article III, subdivision 4 (b) of the declaration of trust provided that the trustee, from moneys received, should pay taxes, and subdivision 4 (e) of that article provided for ·payment of interest. Article IV, subdivision 3 provided: ''The Beneficiary (Farm Builders) covenants and agrees to deposit with the Trustee, all sums necessary for the payment of items shown in article III. . . .'' Subdivision 4 of the same article reads: ''The Beneficiary shall have the privilege of retaining possession of the said Trust property and to have the management and control of the same, so long as there is no default hereunder, . . .'' Article V, subdivision 15 contains this condition: ''Time is the essence of this Agreement and full performance by the Beneficiary of all its obligations hereunder, is and shall be a condition precedent to its rights to the benefits of this Declaration of Trust.'' On November 13, 1939, taxes and interest were in default, respondents therefore were not entitled to the benefits of the declaration of trust and the notice of that date did not constitute a breach of the agreement.

 Respondents assert that the description of the property in the notice of default and in the notice of sale was defective. The trial court did not so find. Moreover, the reference in each of said instruments to the date and place of record of a deed describing the same property was sufficient. (9 Cal. Jur. 297.)

 Appellants contend that the judgment against the Title Co. was erroneous because the plaintiffs themselves alleged in their complaint that the Title Co. was not threatening to sell under the deed of trust. It is true that such is the allegation. However, as we have pointed out above, the remedies under the two instruments were cumulative consequently the threat of the beneficiary to require a sale under one was in substance equally a threat to demand a sale under the other. To enjoin a sale under one and not under the other would be an idle act.

For the foregoing reasons we conclude that the lower court erred in ordering judgment in favor of Farm Builders and in holding that Pacific States Corporation had no interest in the trust instruments; it further erred in holding that no sale under the declaration of trust could be made for failure to

pay principal or interest. The findings and evidence are insufficient to support either injunction.

The judgment is reversed.

Sturtevant, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 24, 1942. Carter, J., voted for a hearing. Edmonds, J., did not participate therein.